**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **Comcast of Massachusetts I, Inc.**   ) | **Case No.:  1:04-cv-11844-REK** |
|                                         ) | |
| Plaintiff,                              ) | **MEMORANDUM OF LAW IN SUPPORT** |
|                                         ) | **OF PLAINTIFF'S MOTION FOR** |
| vs.                                     ) | **DEFAULT JUDGMENT** |
|                                         ) | |
| **William Antos**                       ) | |
|                                         ) | |
| Defendant                               ) | |
|                                         ) | |
|                                         ) | |

**1.  Procedural history**

The Plaintiff filed a Complaint in this action on August 24, 2004.  The Defendant was served, in hand, with copies of the Complaint, Summons and other pertinent documentation on September15, 2004.  Thereafter, the Defendant failed to appear in this action.  On November 2, 2005 Default was entered against the Defendant in this action.  Plaintiff, after requesting and receiving an extension has now moved for Default Judgment against the Defendant.

**2.  Analogous Case Law**

The Plaintiff has moved forward for Default pursuant to 47 U.S.C. § 553, a provision of Title 47 that prohibits the unauthorized interception of television signals from the cable television system.  The telecommunications provisions of the United States Code also contain the provision, 47 U.S.C. § 605, which prohibits the unauthorized utilization of interstate radio-originated communications.  Section 605 is extremely similar to 47 U.S.C. § 553.

Both provisions essentially bar the unauthorized interception of television signals. Also, the statutory damage provisions for non-commercial defendants in § 605 and § 553 are extremely similar.  In fact, the Second Circuit has held that where there is an unauthorized interception of signals from a coaxial cable, and the signals intercepted from the cable include interstate radio-

Page  1

originated communications, both §605 and §553 are violated. See *International Cablevision, Inc. v. Sykes* ("Sykes I"), 997 F. 2d 998, 1007 (2d Cir. 1993); *International Cablevision, Inc. v. Svkes* ("Sykes II"), 75 F.3d 123, 131 n.4 (2d Cir. 1996); but see *Charter v Burdulis,* 367 F.Supp.2d 16 (D. Mass 2005). In any event, even if § 605 might not apply for unauthorized cable television violations in the District of Massachusetts the cases decided pursuant to 47 U.S.C. § 605 are, at least, analogous or similar to §553 cases. Accordingly, the Plaintiff will make citations to § 605 cases simply as persuasive authority.

In this action the Defendant utilized a black market non-addressable cable television descrambling device that is sometimes called and will hereinafter be called a black box. In some of the cases cited in this Memorandum, the cable television company's legitimate converters/descramblers had been covertly modified by individuals to create non-addressable descrambling devices, in essence, homemade black boxes. Therefore, these homemade black box cases are analogous to the claims in this Civil Action. Additionally, the Plaintiff may cite to satellite television cases in this Memorandum wherein the defendants utilize satellite de-scrambling devices that are also similarly analogous to the black box utilized by the Defendant in this Civil Action.

**3. The Plaintiff's Case without the Default**

Even without the Defendant's Default, the Plaintiff still has a strong case against the Defendant. Possession of a television descrambling device is sufficient evidence from which a trier of fact could infer that the device was used to descramble the Plaintiffs television signals. See. *DirecTV. v. Miller*, Case no 6:03-cv-1027-Orl-19KRS (a copy of the unpublished case is attached hereto as "**Exhibit A**"). In the Miller case, the plaintiff, DIRECTV, had evidence that the defendant possessed a satellite television descrambling device called an "unlooper". The defendant in the *Miller* case moved for Summary Judgment against DIRECTV contending that DIRECTV lacked the necessary "direct evidence" such as eyewitness testimony or videotape of

some wrongdoing and the defendant denied using the "unlooper". The Court rejected this argument stating:

> A reasonable jury could conclude that the defendant illegally stole DirecTV's programming. Based on their life experience, a jury could reasonably assume that people only buy electronic equipment such as televisions, computers, or (in the case of Defendant) satellite piracy unloopers when they plan to use such equipment. It would be a strange world, after all, if people regularly bought such equipment and then put it in the closet to collect dust. *Id* at 7

Moreover, the Defendant's actual possession of a television descrambling device leads to the reasonable inference that the device was used to descramble. In *Community Television Systems, Inc. v. Caruso*, 134 F. Supp. 2d 455 (D. Conn. 2000), <u>aff'd</u>, 224 F.2d 430 (2d Cir. 2002), there was evidence that the defendants purchased and installed cable television de-scramblers that would allow them to illegally view the plaintiff's cable television programming. *Id*. at 456. Although there was no so-called "direct" evidence that the defendants had ever actually used the devices the court, nonetheless, found the defendants liable for using the devices. After noting that the defendants had engaged in the transactions of obtaining descrambling devices from a distributor named "Radil" the court said:

> Based on the record here, the most reasonable inference is that each such transaction was engaged in with Radil so the descrambler could be used for its intended purpose, namely to receive cable services over TCI's system; there is no evidence of non-use or any other use. Thus, the court concludes that each of the named defendants used and benefited financially from the descrambler sold by Radil, commencing in 1992 *Id*. at 460.

The Second Circuit affirmed the pertinent elements of the Connecticut District Court's liability decision in the *Caruso* case. In fact, the Second Circuit stated that the purchase and installation evidence was ***"at least"*** enough evidence for a rebuttable presumption of use. The court said:

> "In the pending case, the seller's computer records showed the names of [the defendants] and the devices were installed in their home. That

Page 3

>evidence suffices to create ***at least*** a rebuttable presumption that each of them is liable." *Community Television Systems, Inc. v. Caruso*, 284 F.3d 430, at 432 (2nd Cir. 2002) ( emphasis added).

Additionally, the Fifth Circuit recently found that where an individual purchased a satellite descrambling device and where that individual had the necessary satellite dish to bring signals into his home unauthorized interception of signals could be inferred. See. *DIRECTV Inc. v. Minor* 420 F.3d 546 (5th Cir. Tex. 2005).

**4. Well Pled Facts Deemed Proven Upon Default**

The Default already entered in this action against the Defendant is similar to a finding of liability against the Defendant. See, *Almedia v. Secretary of Health Education of Welfare*, 622 F. 2d 1044 (1st Circuit 1980). Accordingly, based upon the Default that has already entered against the Defendant, the Plaintiff has now proven the liability of the Defendant as to the matters set forth in the Plaintiff's pleadings.

Accordingly, the Plaintiff has proven certain pertinent facts, including but not limited to the facts that:

   a. The Plaintiff has the legal franchise to sell cable television services in the Defendant's area;

   b. The Plaintiff distributes its cable television services to its subscribers utilizing scrambling technology such that a subscriber will receive descrambled (clear view) signals only for those services the subscriber is authorized to receive;

   c. On or before 8/29/2001 the Defendant was in possession of an illegal, unauthorized descrambling device;

    d.   From on or before 8/29/2001, the Defendant utilized an unauthorized descrambling device to receive and/or intercepted the Plaintiff's premium cable channels and pay per view events without authorization and without payment to the Plaintiff; and

    e.   The Defendant's unauthorized interception of signals was done knowingly and willfully.

5. **Additional Facts from Affidavit**

Along with this Memorandum, the Plaintiff has submitted an Affidavit of a Comcast employee; from that Affidavit, additional facts can be determined. Specifically:

a. Non-addressable descramblers (black boxes) had the ability to descramble the Plaintiff's premium channels and pay-per-view channels;

b. On August 28, 2001 the Defendant had a black box attached to his television and it was operating to descramble all stations;

c. Comcast received an anonymous tip that the Defendant was using a black box in March of 2000;

d. On May 17, 1999 the Defendant returned a Comcast-issued descrambler that was in his account, but he never asked for a replacement for this descrambler. A black box could clearly be a replacement for a Comcast-issued descrambler.

e. In the 27 month period of time from May 17, 1999 to August 29, 2001 the Defendant did not order any premium channels or pay-per-view offerings during the pertinent period of time. This Defendant's account history also reveals that the Defendant did purchase non-premium stations during this pertinent period of time

    f.  In the 27 month period of time from May 17, 1999 to August 29, 2001 the charges and offerings varied significantly but taking into account the length of time, the variations in price and variations in offerings, it is reasonable to state that the Defendant, through the use of the device, would have had access to all of the:

        i.  Premium channels with an *approximate on average* price of $65.00 per month. This $65.00 figure represents the value of the premium channels the Defendant had access to over and above the non premium stations he was actually paying for.

        ii.  Pay per view movie offerings with an *approximate on average* price of $3.95 per movie. There were numerous movies offered per month.

        iii.  Adult pay per view movie offerings with an *approximate on average* price of $8.00 per movie. There were numerous Adult movies offered per month

        iv.  Special event pay per view offerings (e.g.; boxing or wrestling match) with an *approximate on average* price of $30.00 per special event. On average there was at least one special event per month.

**6. Liability**

Based upon these facts and others set forth in the Plaintiff's pleadings, the Defendant is now liable to the Plaintiff for willful violations of Title 47 U.S.C. § 553(a). Specifically, the Defendant's actions violated §553(a)(1), which provides:

> **No person shall intercept or receive or assist in intercepting or receiving any communications services offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.**

## II.     Damages

**1.  Damage Provisions and Remedy Provisions in Title 47 U.S.C. § 553(c)**

Title 47 U.S.C. §553(c) provides civil damages and remedies to an aggrieved party from Defendants who have violated the above referenced §553(a) (1).  Various subsections of § 553 (c) provide:

1. The Court may grant a final injunction to prevent further violations of §553 (a)(1) pursuant to 47 U.S.C. § 553 (c)(2)(A);

2. The Court may grant recovery of full costs including awarding reasonable attorney's fees to the aggrieved party who prevails pursuant to 47 U.S.C. 553(c)(2)(C); and

3. The Court may award actual damages or the Court may, at the Plaintiff's election, award statutory damages in a sum of not less than $250.00 or more than $10,000.00 as the court considers just, pursuant 47 U.S.C. § 553(c)(3)(A)(ii).

4. The court can increase the statutory damage award by up to $50,000.00 if the violations of §553 (a) were willful and for private financial gain pursuant to 47 U.S.C. § 553(c)(3)(B).

**2. The Assessment of Statutory Damages**

Although 47 U.S.C. §553(c) provides little guidance on the assessment of statutory damages, courts have used a variety of methods when assessing statutory damages including:

 **(a) Estimating actual damages**, See *Comcast v Naranjo* 303 F. Supp. 2d 43 (D. Mass 2004), *Charter v Burdulis,* 367 F.Supp.2d 16 (D. Mass 2005) and *Comcast v Doucette* CA NO,

03-11779-REK (D. Mass 2005) (a copy of the unpublished case is attached hereto as "**Exhibit B**");

**(b) Assessing additional damages, over and above an estimate of actual damages, pursuant to the exemplary damages provision of the statute, 47 U.S.C. § 553(c)(3)(B), based upon the willfulness and private financial gain of the defendant.** See *Charter v Burdulis,* 367 F.Supp.2d 16 (D. Mass 2005) and *Comcast v Doucette* CA NO, 03-11779-REK (D. Mass 2005), *Cablevision v Lokshin*, 980 F. Supp. 107 (E.D.N.Y. 1997)

**3. The Estimate of Actual Damages**

**A. Estimating per month actual damages through reasonable inferences of use.**

In the case of *Comcast v Naranjo* 303 F. Supp. 2d 43 (D. Mass 2004) the Massachusetts Federal District Court estimated damages from the use of the modified homemade black box by making reasonable inferences of the amount of use of the device by the Defendant in that case. The Court in the *Naranjo* case found there where an individual had access to a non-addressable cable television descrambler it was reasonable to infer some unauthorized interception based upon the use of the device. The *Naranjo* court found that it was that it was reasonable to infer that the monthly damages included:

a. The cost of the premium channels the defendant had unauthorized access to each month ( this is the differential between what a defendant pays for service and the cost of all of the premium channels that they are able to obtain with the descrambling device);

b. Ten (10) pay-per-view movies each month;

      c.    Four (4) of the more expensive pay-per-view offerings.

Applying these numbers to the cost of the services during the pertinent time frame as set forth in the Affidavit of the Plaintiff an estimate of monthly damages based upon reasonable inferences of use would be $136.50

**B. Estimate of number of months of unauthorized interception.**

The Court in the *Naranjo* case found that it could infer when the piracy started. The defendant in that case had already been in possession of the subject cable television company issued converter/descrambler when at a particular point in time he stopped ordering scrambled channels he had been purchasing. The court inferred that once there was no more purchasing of scrambled channels this was the point where the covert modification of the converter/descrambler occured and where it was thereafter used as a homemade black box for the unauthorized interception of signals. In the *Charter* case the court found that the piracy started on that date the defendants purchased their black boxes, a date which could be obtained from the invoice records with reference to the purchases the subject black boxes.

In this case Comcast does not have any invoice that shows when this Defendant purchased his black box. Yet, there are a couple of facts that will allow us to infer when the piracy starting this action. First off, in March of 2000 someone anonymously called Comcast to tell them the defendant was using a black box. Clearly we can infer that piracy was going on in March of 2000. Also, in May of 1999 the defendant turned in one of his legal Comcast issued converter/descramblers but he never got a replacement from Comcast. One explanation for this action is that it was at that point in time he got the black box for the TV in question. Therefore, absent other information from the Defendant it can be inferred that unauthorized interception

started in May of 1999 and continued until August of 2001 when the black box was removed from his home. This represents approximately 27 months of unauthorized interception.

### E. Conclusion as to estimates of actual damages

Utilizing per month estimate of actual damages based upon a reasonable inference of use we have a per month damage figure of $136.50. Applying that figure to the 27 months of estimated unauthorized interception we achieve an estimate of actual damages of $3,685.50.

**4. Assessing additional damages, over and above an estimate of actual damages, pursuant to the exemplary damages provision of the statute, 47 U.S.C. § 553(c)(3)(B), based upon the willfulness and private financial gain of the defendant.**

In the recent cases of *Charter v Burdulis* 367 F.Supp.2d 16, 2005 (D.Mass 2005) and *Comcast v Doucette* CA NO, 03-11779-REK (D. Mass 2005) the Massachusetts Federal District Court found it could assess additional damages pursuant to 47 U.S.C. § 553(c)(3)(B) if it found the violations of 47 U.S.C. § 553(a) were willful and were for a private financial gain. *Id* at 20. The court went on to find that it was indeed willful to obtain and utilize a descrambler. *Charter* at 22.

The court in the *Charter* case also found that "An individual's use of a descrambler to obtain cable programming without paying for it constitutes 'private financial gain' within the meaning of the statute, absent usual circumstances not apparently present here." *Charter* at 25. The *Charter* court stated that this reasoning was also followed in the case of *Cablevision v Lokshin*, 980 F. Supp. 107 (E.D.N.Y. 1997). The *Charter* case was cited favorably and followed in the case of *Comcast v Doucette* CA NO 03-11779-REK (D. Mass 2005) where the Court

assessed additional damages pursuant to 47 U.S.C. § 553(c)(3)(B) where the defendant was using a "homemade black box".

The Plaintiff asserts that the Defendant's actions in this case are extremely similar to the defendants' actions in the Charter case. Procuring and utilizing a black box to avoid paying cable television bills was a willful and intentional act done to give the Defendant a private financial gain subjecting him to the additional statutory damages pursuant to 47 U.S.C. § 553(c)(3)(B). This Defendant should be assessed additional damages in at least the amount of $1,000.00, the figure that was utilized in the *Charter* case.

**5. Conclusion as to Statutory Damages**

Based upon the statute, the arguments and the case law referenced above, statutory damages in this case could be assessed even higher than the $4,500.00 that is being sought by the Plaintiff.

### III.   Injunctive Relief

Based upon the Defendant's liability as determined by the Default, the Plaintiff is entitled to injunctive relief against the Defendant pursuant to Title 47 U.S.C. § 553 (c) (2)(A) which provides that the Court:

> "may grant temporary and final injunctions on such terms as it may
> deem reasonable to prevent or restrain violations of subsection (a)(1)
> of this section"

The Plaintiff need not prove irreparable harm for the injunction to issue. Where express authority for issuance of statutory injunctions is provided by legislative enactment, an injunction may issue without resort to the traditional "equitable" prerequisites so long as liability has been established under the statute. See *General Instrument Corp. v. Nu-Tek Electronics & Manufacturing, Inc.*, 3F. Supp 2d 602, 607 (E.D.Pa.1998), aff'd 197F.3d 83 (3d Cir.1999). The

Page   11

terms of the requested injunction are reasonably drafted to thwart any future piracy activities by the Defendant.

### IV.    Attorney's Fees

Pursuant to Title 47 U.S.C. 553(c)(2)(C), the Court should direct the recovery of full costs, including awarding reasonable attorneys fees to an aggrieved party who prevails. The First Circuit follows the "lodestar" approach when awarding attorney's fees pursuant to a Federal statutory authorization. See, *Furtado v. Bishop*, 635 F.2d 915, (1st Cir. 1980). Using the "lodestar" approach, the Court would normally multiply the number of hours worked by a reasonable hourly rate. Utilizing the "lodestar" approach, the Court would, in essence, multiply the reasonable number of hours worked by a reasonable hourly rate. Plaintiff's counsel has filed an Affidavit with this court that would justify an attorney's fees award of $663.00.

.

### V.    Post-judgment Interest

The Plaintiff is entitled to post-judgment interest accruing on the Judgment pursuant to 28 U.S.C. §1961. Said statute covers post-judgment interest on civil actions brought to judgment in U.S. District Courts.

### VI.    Costs

The Plaintiff is also entitled to costs incurred in this action pursuant to § 553, specifically:

|   |   |   |
|---|---|---|
| a. | Filing Fee ( including fee for out-of-state attorney): | $150.00 |
| b. | Sheriff's Service Fee: | $46.40 |

**TOTAL COSTS:**                                                                                              **$196.40**

### VII.    Conclusion

Pursuant to all of the above, the Plaintiff is entitled to a default judgment as follows:

1.    $4,500.00 in statutory damages pursuant to § 553;

2. Attorney's and paralegal's fees of **$663.00**

3. Costs of **$196.40**.

4. The issuance of a permanent injunction pursuant to Title 47 §553 utilizing the following language or language of a similar nature:

> The Court hereby enjoins the Defendant, the Defendant's respective agents, servants, employees, and any person or entity controlled directly or indirectly by the Defendant or acting on the Defendant's behalf from the further modification and/or use of electronic equipment designed for the unauthorized interception of signal in violations of provisions of Title 47;

5. Post-judgment interest running on the judgment pursuant to 26 U.S.C. § 1961.

Respectfully Submitted for the Plaintiff,
Comcast of Southern New England, Inc.
By Its Attorney,

2/27/2006       ___/s/ John M. McLaughlin___
Date      John M. McLaughlin
**Green Miles Lipton & Fitz-Gibbon LLP**
77 Pleasant Street
P.O. Box 210
Northampton, MA 01061-0210
Telephone: (413) 586-0865
BBO No. 556328